GEOFFREY A. HANSEN
Acting Federal Public Defender
ANGELA M. HANSEN
Assistant Federal Public Defender
1301 Clay Street, Suite 1350N
Oakland, CA 94612
Telephone:     (510) 637-3500
Facsimile:     (510) 637-3507

Counsel for Defendant HARTMAN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 20-CR-00126 VC |
| Plaintiff, | |
| v. | **DEFENDANT'S REQUEST TO CONTINUE CURRENT TERMS AND CONDITIONS OF RELEASE PURSUANT TO 18 U.S.C. §§ 3143, 3145(c)** |
| RICHARD EUGENE HARTMAN | |
| Defendant. | |

Defendant Richard Hartman pled guilty, with a plea agreement, to a one-count indictment charging possession of child pornography. Pursuant to sections 3143 and 3145 of Title 18 of the United States Code and *United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003), he respectfully asks the Court to allow him to continue to remain free on bond so that he may self-surrender to serve any sentence imposed. Under *Garcia*, the Court has broad discretion to consider myriad factors, alone or in combination, to allow Mr. Hartman to self-report to his designated institution. As discussed below, multiple factors support allowing him to self-surrender.[1]

---

[1] Defense counsel conferred with the government, and the government does not oppose the Court finding that there are exceptional reasons for Mr. Hartman's continued released based on COVID-19 and the global pandemic alone, based on the specific facts and circumstances of this case. Mr.

1

**BACKGROUND**

2

The government charged Mr. Hartman in March 2020 with one count of possessing child

3

pornography.  He was arrested in this case and made his initial appearance on February 28, 2020.

4

PSR ¶ 4.  On March 5, 2020, the magistrate court ordered him released on an unsecured bond.  *Id.*

5

In the fourteen months since then, Mr. Hartman has complied with all the conditions of his federal

6

pretrial release.  *Id.*  Pretrial Services reports that Mr. Hartman complied with both the location-

7

monitoring condition, when it was in place, and continued to participate in individual and group

8

counseling.

9

10

Mr. Hartman's only prior contacts with the criminal-justice system were two misdemeanor

11

convictions from 1995 and 1996, when he was 21 and 22 years old, more than 20 years ago.  PSR

12

¶¶ 65, 66.  He spent no more than 20 days in jail for these offenses.  *Id.*  He is in Criminal History

13

Category I and has zero criminal history points.  PSR ¶ 67.

14

15

There is no indication whatsoever that Mr. Hartman poses a risk to the community or a

16

flight risk.  He has been living with his mother and stepfather, and he helps care for them.  PSR ¶¶

17

78-79.  His family, including his brothers, has been "'stunningly' supportive."  PSR ¶ 78.

18

**ARGUMENT**

19

By virtue of his guilty plea, Mr. Hartman sustained a conviction for a crime of violence.

20

*See* 18 U.S.C. § 3156(a)(4)(C) (defining any felony offense under Chapter 110, including a child

21

pornography possession offense, as a crime of violence).  According to 18 U.S.C. § 3143, detention

22

pending sentencing is mandatory for those convicted of crimes of violence unless a court finds by

23

clear and convincing evidence that the person is not likely to flee or present a danger to the

24

community and there is "a substantial likelihood that a motion for acquittal or new trial will be

25

26

27

28

---

Hartman nevertheless files this brief to provide the Court with the legal framework and basis to make this finding.

-2-

granted."[2]  18 U.S.C. § 3143(a)(1), (2).

However, 18 U.S.C. § 3145(c) establishes an exception to both these provision that purport to limit or block release pending execution of the sentence imposed or appeal.  As relevant here, the exception allows release pending execution of the sentence of even those defendants whose appeals are not likely to result in a new trial if there are exceptional reasons why the person's detention would not be appropriate.  *Garcia*, 340 F.3d at 1018; *see also United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) (per curiam); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991).  All these appellate decisions address 18 U.S.C. § 3145(c), which provides an important exception to the detention requirements in sections 3143(a)(2) and (b)(2):

> [a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c) (emphasis added).

Section 3145(c) creates a multi-step process.  First, the Court determines whether a defendant, such as Mr. Hartman, whose conviction offense places him within the scope of § 3143(a)(2) and §3142(b)(2), would otherwise satisfy the requirements for release under § 3143(a)(1) and § 3143(b)(1).  Subsections (a)(1) and (b)(1)(A) require Mr. Hartman to demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community.  18 U.S.C. § 3143(a)(1).  He has done so.

---

[2]Although *Garcia* concerned a defendant seeking bail pending appeal, the Court emphasized that the principles it discussed were "equally applicable" to requests for release pending execution of sentence.  340 F.3d at 1015 n.2.

Mr. Hartman has been on federal pretrial supervision for fourteen months. During that time, he has complied with all of the conditions of his release. No credible argument can be made that he is a danger to the community or a flight risk. *See, e.g.*, *United States v. Lancaster*, No. 16-cr-00313-YGR-1, Dkt. 53 (N.D. Cal. Aug. 1, 2017) (granting child-pornography-possession defendant's motion for self-surrender and finding no flight risk or danger based on defendant's compliance during 19 months on state and federal pretrial release).

In the next step for release pending execution of sentence, the Court must evaluate whether there are "exceptional reasons" why it is not appropriate to immediately remand Mr. Hartman. *Garcia*, 340 F.3d at 1015. Other courts construing § 3145(c) have noted that "Webster's Dictionary defines 'exceptional' as 'being out of the ordinary' or 'uncommon, rare.'" *United States v. Reboux*, 2007 WL 4409801, at *2 (N.D. N.Y. 2007) (unpublished) (citation omitted). As such, "[f]inding circumstances that are 'out of the ordinary' is not an onerous hurdle to surmount. 'Exceptional' does not mean 'extreme' or 'novel,' but simply 'infrequent' or 'uncommon.'" *Id.* (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002), and *DiSomma*, 951 F.2d at 497-98). A court may make such a finding based "purely personal circumstances," "legal" reasons, "factual" reasons, or some combination of reasons. *United States v. Kaquatosh*, 252 F. Supp. 2d 775, 777-78 (E.D. Wis. 2003). Consistent with the reasoning of other courts, the Ninth Circuit in *Garcia* held that the statutory language indicated Congress' intent to give the district court "broad discretion . . . to consider all the particular circumstances of the case before it and draw upon its broad 'experience with the mainsprings of human conduct.'" 340 F.3d at 1018 (citation omitted).

*Garcia* provided a non-exhaustive list of circumstances that might qualify as "exceptional," one of which is particularly relevant to Mr. Hartman. *Garcia* suggests that a case may be exceptional if, notwithstanding the fact that the defendant has been convicted of a crime of

violence, the defendant has no prior history of violence and does not appear to be "the type of violent person for whom Congress intended the mandatory detention rule." *Id.* at 1019.  In *Reboux*, the district court allowed the defendant who had been convicted of a child-pornography offense to remain out of custody pursuant to § 3145(c).  It noted that, although child pornography is labeled a "crime of violence" for purposes of sentencing . . . , Defendant's conduct was not violent.  He did not have sexual conduct with any child, nor did he attempt to communicate with any child for illicit purposes.  Obtaining child pornography for private sexual gratification, although wrongful, is not in and of itself an act of violence under any ordinary definition of that term."  2007 WL 4409801, at *2.  Several district courts, including this one, have followed *Reboux* in considering possession of child pornography to be non-violent conduct.  *See, e.g.*, *Lancaster*, No. 16-cr-00313-YGR-1, Dkt. 53 at 3 (following *Reboux* and granting self-surrender, noting that "despite his conviction of possession of child pornography, defendant has never committed an actual physical act of violence on any person, nor has he had, or attempted, sexual contact with a child."); *United States v. Winsor*, 890 F. Supp. 2d 1257, 1259-60 (D. Or. 2012) (granting motion for bail pending appeal after conditional plea to possession and receipt of child pornography and noting, inter alia, that defendant's offense conduct was non-violent); *United States v. Watkins*, 2012 WL 1599836, at *4 (M.D. Fla. May 7, 2012) (granting bail pending for defendant convicted of receipt of child pornography based in part on fact that defendant did not have sexual conduct with or attempt to communicate with child).

Like the defendants in *Reboux*, *Winsor, Watkins* and *Lancaster*, Mr. Hartman has never committed an act of violence.  He never had sexual contact with a child or attempted to contact a child for that purpose.  There is no reason to think that his continued release would endanger anyone.

Another circumstance suggested as exceptional in *Garcia* is a defendant who, like Mr.

Hartman, has ongoing medical or psychological needs that would be disturbed by an immediate remand. 340 F.3d at 1019-20. The Court explained that the district court can consider "the desirability of maintaining an uninterrupted course of treatment while a defendant remains in the care of a particular physician who is providing individual medical supervision to the patient." *Id.* This includes the consideration of mental as well as physical "well-being-risks." *Id.* A defendant's continued participation in treatment may be an "exceptional reason" as defined in § 3145(c). *See, e.g., Garcia*, 340 F.3d at 1018 ("District court judges may consider such factors as the desirability of maintaining an uninterrupted course of treatment while a defendant remains in the care of a particular physician who is providing individual medical supervision to the patient."); *Winsor*, 890 F. Supp. 2d at 1259-60 (citing, among other things, defendant's participation in therapy as part of exceptional reasons justifying child-pornography defendant's continued bail pending appeal); *Kaquatosh*, 252 F. Supp. 2d at 779 (citing, among other factors, defendant's successful participating in substance-abuse program).

Mr. Hartman suffers from chronic depression for which he currently is taking medication. PSR ¶ 82. As Pretrial Services indicated, he has been participating in regular group and individual therapy sessions and is addressing issues that led to the current charge. An August 2020 psychological evaluation recommended that he receive "'individual and group counseling that will help him explore his behavior during the controlling offense.'" PSR ¶¶ 84, 87. Although he ultimately may be required to serve a prison sentence regardless of his mental or physical health, the Ninth Circuit has recognized that "it may be unreasonable to force him to begin [his custodial sentence]" earlier than necessary. *Garcia*, 340 F.3d at 1020.

Mr. Hartman's family circumstances – specifically, his providing physical caretaking of and assistance to his mother (80 years old) and stepfather (84 years old), PSR ¶¶ 78-79 – also support a finding of exceptional reasons in this case. His mother has heart problems and "struggles

with mobility and a bone-health condition.  To assist, he completes the household chores and assists his mother with physical exercises to maintain her strength.  He believes his absence from the home upon his incarceration will negatively affect their physical health and independence." PSR ¶ 78.

In an analogous context, and applying the higher legal standard of "extraordinary and compelling reasons,"[3] several judges in this district have granted compassionate release to child-pornography defendants.  *See, e.g.*, *United States v. Shia*, 15-CR-257-VC-1, 2020 WL 5510723 (September 11, 2020) (granting compassionate release to child pornography defendant with prior conviction for same offense finding he was "not likely to further endanger the community"); *United States v. Breslin*, No. 16-cr-00515-YGR-1, 2020 WL 4584244 (N.D. Cal. Aug. 10, 2020) (granting compassionate release to 71-year-old child-pornography defendant with multiple medical conditions); *United States v. Allinger*, No. 19-cr-00144-RS-1, 2020 WL 3039144 (N.D. Cal. May 20, 2020) (granting release for 64-year-old child-pornography inmate with serious medical conditions and recent hospitalizations who had served less than a year of a 48-month sentence);; *United States v. Fischman*, No. 16-cr-00246-HSG-1, 2020 WL 2097615, at * (N.D. Cal. May 1, 2020) (granting compassionate release for 72-year-old child-pornography defendant who tested positive for coronavirus).  In *Breslin*, for example, Judge Gonzalez Rogers granted early release, despite the defendant's willful violations of the terms of his pretrial release, in light of, *inter alia*, expert opinions and studies that "child pornographers typically re-offend at a very low rate" and "offenders convicted of child pornography have fewer risk characteristics and recidivate less frequently compared to contact sex offenders."  2020 WL 4384244, at *2 (internal quotation marks omitted).  And in *United States v. Connell*, Judge Seeborg granted early release to a 69-year-old child-pornography defendant who had been allowed to self-surrender, noting that he was "a non-

---

[3] 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021).

violent offender whose early release will not endanger the community." ___ F. Supp. 3d ___, No. 18-cr-00281-RS-1, 2020 WL 2315858, at **1, 6 (N.D. Cal. May 8, 2020). Some of the facts Judge Seeborg relied on to grant compassionate release also support Mr. Hartman's request for self-surrender: he spent 14 months on pretrial release without any infractions and he will be "released into the same home, living with the same individuals, as he was living pre-trial." *Id.*, at *6.

Finally, in determining whether there are "exceptional reasons" to allow Mr. Hartman to self-surrender for service of his sentence, the Court may and should consider the ongoing COVID-19 pandemic. The federal Bureau of Prisons [BOP] reports that there are "confirmed active cases" of COVID-19 at 81 of its facilities as of April 30, 2021 (https://www.bop.gov/coronavirus/). As of that date, 194 federal inmates and 161 BOP staff have confirmed positive COVID-19 tests. *Id.* Incarceration will always pose a greater risk of exposure to the virus; "[R]ates of infection and death among incarcerated people have persistently remained higher than that of the general population." Becky Sullivan, *All Federal Inmates to be Offered Vaccine by mid-May, BOP Director Says*, NPR (Apr. 16, 2021), available at https://www.npr.org/2021/04/16/988237102/all-federal-inmates-to-be-offered-vaccine-by-mid-may-bop-director-says. But the BOP's ongoing efforts towards vaccinating prisoners and staff, *id.*, as well as the generally decreasing incidence of cases around the country,[4] means that postponing Mr. Hartman's prison sentence may save his life or at least prevent him from becoming infected.

Mr. Hartman's personal characteristics increase his risk of serious consequences if he contracts COVID-19. He is 48 years old, 6'0" tall and currently weighs 215 pounds, PSR ¶ 80,

---

[4] *See* CDC, *COVID Data Tracker Weekly Review* (Apr. 30, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (showing 16.2% decrease in the seven-day moving average of daily new cases).

which gives him a BMI of 29.2.[5]  Mr. Hartman's BMI puts him in the CDC's "overweight"

category, approaching its 30.0 BMI cut-off for obesity.  Centers for Disease Control and

Prevention [CDC], *Adult BMI Calculator*, available at

https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculat

or.html.  His BMI "can make [him] more likely to get severely ill from COVID-19."  CDC, *People

with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/people-with-medical-conditions.html (Apr. 29, 2021).  His age also increases his

risk.  *See id.* ("[M]ore than 95% of COVID-19 deaths occur in people older than 45.").  The Court

may consider these facts, too, in finding that there are exceptional reasons to allow Mr. Hartman to

self-surrender.[6]

## CONCLUSION

Because Mr. Hartman pled guilty to an offense that qualifies as a "crime of violence," the

decision whether to immediately remand him ordinarily would be governed by 18 U.S.C. §

3143(a)(2).  However, Congress authorized district courts to permit a defendant to remain out of

custody and self-surrender, even where an immediate remand otherwise would be required.  Mr.

Hartman has been in complete compliance with the conditions of his pretrial release since his

release 14 months ago.  He is therefore not a flight risk or danger to the community.  Finally, under

*Garcia*, all the circumstances described above provide "exceptional reasons" for his continued

release.

---

[5]In this paragraph, the PSR lists the wrong age and weight for Mr. Hartman. The probation office agreed to amend the report after sentencing.

[6]Mr. Hartman received his first dose of the Moderna vaccine on May 6, 2021.  He will not be fully vaccinated and develop antibodies until about mid-June 2021.

1    Dated:  May 11, 2021

2

3                                          Respectfully submitted,

4                                          GEOFFREY A. HANSEN
                                           Acting Federal Public Defender
5                                          Northern District of California

6                                                  /S/
                                           ANGELA M. HANSEN
7                                          Assistant Federal Public Defender

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28