STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ANKUR SHINGAL (CABN 303434)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7108
    FAX: (415) 436-7234
    Ankur.Shingal@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 20 CR 126 VC |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S SENTENCING** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| RICHARD EUGENE HARTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

On October 26, 2020, defendant Richard Eugene Hartman pled guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(4).  As reflected in both the plea agreement and the presentence report (PSR), ***Hartman admitted that he knowingly possessed approximately 759 videos and 8,435 images of child pornography***, and that those "images and videos included visual depictions of infants being subjected to sexually explicit conduct, children being subjected to sexually explicit conduct with animals, groups of toddlers being sexually assaulted by multiple adults, and children being tied up and subjected to brutal physical and sexual abuse." *See* Dkt. 30 (Plea Agreement) ¶ 2.

That staggering number of images and videos—which Hartman also admits depicted children

being subjected to sadistic or masochistic conduct and other violence, *see id.*—are not simply images; they have real life victims, including some who were no older than 10 years old at the time of their abuse. Many of those victims provided powerful letters to the Court detailing the horrific consequences of the abuse that they suffered. Hartman's possession and viewing of those images victimized those victims again.

In light of both the type and substantial number of images and videos that Hartman possessed in this case, the government submits that he should be sentenced to 97 months' imprisonment, 10 years' supervised release, a $100 special assessment, $21,000 in restitution, and forfeiture. The proposed sentence reflects the seriousness of Hartman's offense, provides just punishment for the substantial harm that he inflicted on the child victims through his possession of child pornography, affords general deterrence to other such abusers, and will also specifically deter Hartman's future criminal activity.

## II.   OFFENSE CONDUCT

The government agrees with the description of the offense conduct in the presentence report. *See* PSR ¶¶ 5-16. While the PSR includes a few summaries of the digital files that Hartman possessed, that is only a small number of the videos and images found in Hartman's possession: he admitted to possessing 759 videos and 8,435 images of child pornography on a variety of devices. *Id*. ¶ 15; Plea Agreement ¶ 2.

With respect to victim impact, the PSR reflects that 2,725 images and 193 videos matched 139 known series of images. PSR ¶ 18. A number of those victims provided victim impact statements, all of which detail the substantial harm that Hartman's possession of images and videos caused them. *Id*. ¶¶ 21-45. A sampling of those powerful statements[1] include:

- Parents of one victim stating: "She is given a 'life' sentence by the people who download images of her sexual abuse . . . . By having our daughters' sexual abuse images online, monsters will continue to exploit her, leaving her with a tremendous amount of pain to deal with." *Id*. ¶ 22.

- "My childhood innocence was stolen and continues to be exploited on a daily basis by

---

[1] The government does not reference the victim's names or the series specifically in this memorandum, but the information is laid out in the PSR.

strangers" and that the victim's knowledge that he/she cannot "retrieve the photos or videos, nor remove them from the internet and dark web makes [the victim] feel helpless and powerless." *Id*. ¶ 23.

- "Doe is a living-breathing child. She is not a nameless victim. To the person that seeks out this type of pornography, I want to add that just viewing these pictures may not have physically harmed her, but it does not mean that no harm was done." *Id*. ¶ 25;

- "She is still discovering all the ways that exploitation she suffers daily is hurting her. It has set her life on the wrong course and destroyed her normal childhood, teenage years, and early adulthood that everyone deserves . . . . She wants it all stopped. But she is so powerless to stop it just like she was when she was powerless as a little girl to stop what was done to her." *Id*. ¶ 27.

- "There are and will be so many people out there taking pleasure in watching me suffer, in watching the most terrifying and humiliating moments of my life. Not knowing who has seen you in your most vulnerable moments is a horrifying thing. My images will probably always be circulating the internet, but this person is perpetuating this. This person chose to view the images of my abuse for their pleasure. By having done this they are allowing and encouraging more young victims to be groomed . . . ." *Id*. ¶ 31.

- "My images may never be taken off the internet and may always be circulating across the country, but in THIS case with THIS defendant, I ask for justice to be served . . . . Please hold him accountable for his harm of me." *Id*. ¶ 38.

- "Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood." *Id*. ¶ 41.

- "I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Every day, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways . . . . I want you to know that dealing with the effects of the stress of random men looking at pictures of my sex abuse as a child is like a full time job that wears me down and colors every aspect of my life. Please think of me and what I am going through." *Id*. ¶ 42.

With respect to restitution, the parties filed a joint stipulation outlining their request that Hartman pay a total of $21,000 to 7 victims. *See* Dkt. 41. The PSR concurs with this recommendation. PSR, Sentencing Recommendation, at 1.[2]

### III.   PENALTIES, SENTENCING GUIDELINES, AND PLEA AGREEMENT

The government agrees with the statutory penalties, sentencing calculation, and the summary of the parties agreement set forth in the PSR. Given his Total Offense Level of 28 and Criminal History Category of I, Hartman's Sentencing Guidelines are 78-97 months. *See* PSR, Sentencing Recommendation, at 1.

As discussed above, Hartman pled guilty to the possession charge on October 26, 2020. *See* Dkt. 30. The plea agreement does not require Hartman to enter into custody directly after his sentencing. Instead, based on the defense's representation that Hartman will receive his second COVID shot on June 3, the government request that Hartman be ordered to surrender no later than June 21, 2021 so that he is able to maximize his immunity prior to entering prison.

### IV.   SENTENCING RECOMMENDATION

#### A.   Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

---

[2] The PSR incorrectly states in two places that "6 of 8 victims" are requesting restitution, PSR ¶ 20, and that "victims are requesting restitution totalling $18,000," *id.*, Sentencing Recommendation, at 2. The correct numbers are that 7 victims have requested $3,000 each in request restitution, and that Hartman will pay $3,000 to each of those victims, totaling $21,000. *See* Dkt. 41. The government reached out to the Probation Officer regarding this, and she has confirmed that she will amend the PSR after sentencing.

GOVT'S SENTENCING MEMORANDUM            4
20 CR 126 VC

punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. A sentence of 97 months' imprisonment is sufficient but not greater than necessary in light of the Section 3553(a) factors

A sentence of 97 months' imprisonment, 10 years' supervised release, a $100 special assessment, $21,000 in restitution, and forfeiture of the electronic devices outlined in the PSR, is sufficient to account for Hartman's extremely harmful conduct, substantial cache of child pornography, and the need to deter him and others from committing similar crimes in the future.

#### 1. Seriousness of the offense and just punishment

Hartman possessed a truly staggering quantity of child pornography. For Guidelines purposes, and as the PSR recognizes, he possessed the equivalent of *65,360 images* of child pornography. PSR ¶ 53. While possession of such a serious quantity of illicit material is aggravating by itself, the kind of pornography that Hartman admits to possessing is similarly shocking:

> These images and videos included visual depictions of infants being subjected to sexually explicit conduct, children being subjected to sexually explicit conduct with animals, groups of toddlers being sexually assaulted by multiple adults, and children being tied up and subjected to brutal physical and sexual abuse.

Plea Agreement ¶ 2. That some of these images involved young children *interacting with each other in a sexual manner* (including by performing oral sex), rape scenes, and explicit conduct with animals underlines the depravity of the materials that Hartman possessed and viewed for his personal satisfaction. *See* PSR ¶¶ 7-9.

The seriousness of Hartman's conduct is amplified by the reality that possession of child pornography is not a victimless crime. Indeed, the Ninth Circuit rejected the argument that the only victim of child pornography trading is society in general, observing:

> [Q]uite unlike the drug and immigration offenses . . . which are "victimless" crimes in the sense that the harm that they produce is spread evenly throughout society-the harm caused by the distribution of child pornography is concentrated. It is visited upon a single individual or discrete group of individuals, namely, the child or children used in the production of the pornographic material. The child pornographer simply

> cannot be analogized to the garden-variety drug user convicted under 21 U.S.C. § 844(a) of possessing a controlled substance, who is, practically speaking, his *own* victim. The *child* pornographer victimizes not himself, but *children*.

*United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997). Many of the victim impact statements—including some highlighted above—emphasize that the harm done by Hartman's possession of the victims' images continue to harm the victims specifically by forcing them to re-live the underlying abuse. The government's requested sentence of 97 months in custody takes into account the myriad harms that Hartman's actions have caused.

### 2.  Deterrence and avoiding sentencing disparities

The government's high-end of the Guidelines recommendation is a fair one, and is necessary to serve as a deterrent for both Hartman and other, would-be possessors.

As the Court is no doubt aware, the child pornography industry exists due to the demand for illicit images and videos. Hartman, through his massive collection of images, played a meaningful role in creating and sustaining that demand by possessing the equivalent of *thousands* of images of children being sexually exploited in particularly heinous ways. *See United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("The greater the customer demand for child pornography, the more that will be produced."). Stated differently, but for individuals like Hartman seeking out such images and videos of children being sexually abused, the number of those images and videos would be less, resulting in fewer real-life victims. Such conduct (particularly of the scope and type at issue here), therefore, warrants a substantial sentence. A sentence to the high-end of the Guidelines followed by ten years of supervision will not only deter Hartman from continuing to commit the same crimes, but it will also send a message to other, potential child pornography possessors that such conduct will result in meaningful sentences.

### 3.  The history and characteristics of the defendant

The government acknowledges that Hartman has not been previously convicted of a felony and that he has suffered from depression, including suicidal thoughts, throughout his life. PSR ¶ 82. The PSR also reflects that a psychologist recommended that Hartman receive "individual and group counseling that will help him explore his behavior during the controlling offense." *Id.*, Sentencing Recommendation, at 2. At the same time, however, Hartman was a practicing attorney for a number of

years and is, in the words of that psychologist, "a high-functioning man."

Nevertheless, it bears emphasizing that Hartman's history does not undo the fact that Hartman is an intelligent individual who, to satisfy his own sexual needs, assembled a significant cache of child exploitation material that perpetuated the harm to numerous child victims who have already endured unspeakable injury. Nor does his background erase that the *quality* of images he was viewing—among the most heinous available—demands a significant sentence.

## V.   CONCLUSION

For the reasons stated above, the government submits that the Court sentence Hartman to 97 months' imprisonment, 10 years' supervised release, a $100 special assessment, $21,000 in restitution as outlined in the parties' joint stipulation, and forfeiture of the electronic devices outlined in the PSR.

DATED: May 11, 2021                                 Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney


            /s/
ANKUR SHINGAL
Assistant United States Attorney